340 So.2d 1159 (1976)
GAINESVILLE-ALACHUA COUNTY REGIONAL ELECTRIC, WATER AND SEWER UTILITIES BOARD, Petitioner,
v.
CLAY ELECTRIC COOPERATIVE, INC., et al., Respondents.
No. 48960.
Supreme Court of Florida.
November 12, 1976.
Rehearing Denied January 24, 1977.
*1160 Norm La Coe, George H. Nickerson, Jr., County Attys., and Osee R. Fagan and A. Bice Hope of Fagan, Crouch, Anderson & Folds, Gainesville, for petitioner.
Henry L. Gray, Jr., of Chandler, O'Neal, Gray & Lang, Gainesville, and Prentice P. Pruitt and M. Robert Christ, Tallahassee, for respondents.
ROBERTS, Justice.
We have for review by petition for writ of certiorari Order No. 7040 and Order No. 7102 of the Public Service Commission.
The pertinent facts as supported by the record are succinctly stated in the Order of the Public Service Commission under review. These proceedings were opened on the complaint of Clay Electric Cooperative, Inc. (complainant or Clay) against the Gainesville-Alachua County Regional Electric, Water and Sewer Utilities Board (RUB, defendant or Board), and concern an electric service territorial dispute centering on the unincorporated area of Alachua County known as the "Copeland Settlement."
Clay is a rural electric cooperative organized under Chapter 425, Florida Statutes. The Board is a water, sewer and electric utility system created by interlocal agreement between the city and county under Chapter 163, Florida Statutes. Both utilities have been exempt from regulation by this Commission pursuant to Section 366.02, Florida Statutes. However, a 1974 statutory amendment extended Commission jurisdiction for certain purposes including resolution of "any territorial dispute involving service areas between ... rural electric cooperatives [and] municipal electric utilities... ." Section 366.04(2)(e), Florida Statutes. Although the complaint and answer are limited to the dispute over the Copeland Settlement, this Commission must also consider the larger issues of territorial conflict, duplication of facilities and conservation of energy resources. At present the two utilities are operating without territorial agreement or other service area restrictions, and are thus in potential competition throughout much of Alachua County.
The Copeland Settlement is a subdivision of about 95 low-cost homes located one half *1161 mile east of the Gainesville city limits. The settlement has been served with electricity by Clay for the past 25 years, and is adjacent to an area served by the Board. Since the Copeland Settlement is without a safe, reliable water supply, the Board has agreed to extend water service (and eventually sewer service) to this area. It has an established policy of requiring its water customers to also utilize its electric service. Although rates and service of the utilities are comparable, the Board will be in a position to displace Clay because of its water tie-in arrangement.
By Order No. 7040, the Commission ordered that Clay Electric Cooperative, Inc. and Gainesville-Alachua County Regional Electric Water and Sewer Board develop a territorial agreement relative to the Copeland Settlement area and ordered that the Board refrain from offering electric service or constructing duplicate facilities in the unincorporated area of Alachua County known as the Copeland Settlement. The Commission expressly found:
"In resolving territorial disputes, the Public Service Commission may consider but not be limited to, the ability of utilities to expand services within their own capabilities and the nature of the area involved, including population and the degree of urbanization of the area and its proximity to other urban areas and the present and reasonably foreseeable future requirements of the area for other utility services. Section 366.04(2)(e), Florida Statutes. These considerations are discussed in the same order in succeeding paragraphs.
"Comparative ability to expand services: Both utilities are capable of meeting any foreseeable expansion in the area east of Gainesville. However, the Board generates much of its own power, whereas Clay purchases electricity from both the Florida Power Corporation and the Board.
"The nature of the area: The Copeland Settlement itself is not growing. The general area east of Gainesville is expanding on a gradual basis with primarily industrial development (municipal airport, fairgrounds, planned state psychiatric hospital). Residential development north and south of the Copeland Settlement is sparse. Development is partially blocked to the east by Newnan's Lake and to the west by a correctional farm. Therefore, it cannot be said that this area has achieved any substantial degree of urbanization. Conversely, the Copeland Settlement meets the statutory definition of `rural area' which under the Rural Electric Cooperative Law `means any area not included within the boundaries of any incorporated or unincorporated city, town, village or borough having a population in excess of twenty-five hundred persons.' Section 425.03(1), Florida Statutes.
"Requirements for other utility services: Water and sewer services are urgently needed by residents of the Copeland Subdivision. To this extent, grant of this territory to the Board is favored. However, only internal policy precludes the Board from extending water and sewer service to this area at the present time. Furthermore, the electric-water service tie-in is of questionable legality. Edris v. Sebring Utilities Commission, 237 So.2d 585 (Fla.App. 1970); cert. denied, 240 So.2d 643 (Fla. 1970).
"From the above, it is apparent that either utility may properly serve the area in dispute. Clay is now providing service, however, which should not be duplicated or displaced except as part of an overall service area delineation. Similar territorial disputes between the Board and the Florida Power Corporation were ultimately resolved through territorial agreement (Docket 73724-EU). Such agreements are encouraged to avoid costly competition and wasteful duplication. Storey v. Mayo, 217 So.2d 304 (Fla. 1968). This Commission has the statutory power to approve such agreements, as well as the responsibility to supervise planning of a statewide power system, in part to avoid unnecessary duplication of facilities. Section 366.04(2)(d), (3), Florida Statutes."
*1162 Initially, we find that the letter of complaint filed by Clay with the Public Service Commission was sufficient under the rules of the Commission to invoke its jurisdiction to hear and determine the matter in dispute. Petitioner Board contends that Section 366.04(2)(d) and (e), Florida Statutes, constitute unlawful delegations of legislative authority. These sections provide:
"(2) In the exercise of its jurisdiction, the Commission shall have power over rural electric cooperatives and municipal electric utilities for the following purposes: ...
(d) To approve territorial agreements between and among rural electric cooperatives, municipal electric utilities, and other electric utilities under its jurisdiction. However, nothing in this chapter shall be construed to alter existing territorial agreements as between the parties to such agreements.
(e) To resolve any territorial dispute involving service areas between and among rural electric cooperatives, municipal electric utilities, and other electric utilities under its jurisdiction. In resolving territorial disputes, the public service commission may consider, but not be limited to, the ability of the utilities to expand services within their own capabilities and the nature of the area involved, including population and the degree of urbanization of the area and its proximity to other urban areas and the present and reasonably foreseeable future requirements of the area for other utility services."
We cannot agree that the questioned provisions are unlawful delegations of authority. As respondent asserts, subsections (d) and (e) are limited in scope in providing for jurisdiction of the Public Service Commission over municipalities and rural electric cooperatives for the approval of territorial agreements and the resolution of territorial disputes. Furthermore, Section 366.04(3), Florida Statutes, provides the limitation or guideline incident to such jurisdiction, as follows:
"(3) The commission shall further have jurisdiction over the planning, development, and maintenance of a coordinated electric power grid throughout Florida to assure an adequate and reliable source of energy for operational and emergency purposes in Florida and the avoidance of further uneconomic duplication of generation, transmission, and distribution facilities." (emphasis supplied)
We have reviewed all other points raised by petitioner and our careful consideration and analysis of the petition, the record, briefs and arguments of counsel sustain the view that the findings of the Commission are supported by competent substantial evidence and that, in entering its orders, Respondent Commission met the essential requirements of law.
It was conceded by counsel at the bar of the Court that the water and sewer system involved sub judice is self supporting. We note that where the city could not support a water and sewer system without electric service and where there is a need to tie them together, the circumstances would be different. Each case in this area must stand on its own facts.
Accordingly, having determined that the Orders of the Public Service Commission under review are supported by competent substantial evidence and comport with the essential requirements of the law, we hereby deny the petition for writ of certiorari.
It is so ordered.
OVERTON, C.J., and BOYD and ENGLAND, JJ., concur.
ADKINS, J., dissents.